**In re CRABTREE.**

No. 1298.

District Court, W. D. Virginia, at Big Stone Gap.

Oct. 12, 1944.

George C. Sutherland and Roland E. Chase, both of Clintwood, Va., for bankrupt.

G. Mark French, of Clintwood, Va., for Trustee in Bankruptcy.

PAUL, District Judge.

The bankrupt has petitioned for review of an order entered August 23, 1944, whereby the referee denied a discharge. The record shows that the bankrupt, who gives his occupation as attorney-at-law, filed his voluntary petition in bankruptcy on February 9, 1944, and that an order of adjudication was entered February 11, 1944.

The schedule filed with the petition listed assets aggregating $164, including notes due petitioner in the amount of $59, household goods $50, an automobile $50, and a watch $5. Of these assets exemption was claimed in the household goods, leaving as assets for possible administration property valued at $114. The schedule specifically stated that the bankrupt had "none" of each of the following classes of property: Insurance, stocks and bonds, fixtures, etc., used in business, debts due on open account, other personal property of any description.

The first meeting of creditors was held February 26, 1944, at which time the bankrupt was examined by an attorney representing certain creditors and under this examination the bankrupt admitted ownership of the following articles not listed in his schedules: a shot gun; an office desk, a chair and filing cabinet; 36 shares of stock in the Farmers Fair Association of Dickenson County; two or three $25 War Bonds; a life insurance policy; an account of $25 due him as a fee. His explanation of the omission of several of these articles was that he had merely overlooked them in the preparation of his schedules; as to others he offered no explanation. Immediately following the bankrupt's examination his counsel asked leave to amend the schedules to include the Fair Association stock and the government bonds. When this amendment was filed, which was not until May 11, 1944, it included, besides the stock and bonds, the office fur-

niture, the insurance policy, and an additional note due the bankrupt, and disclosed that the bankrupt owned 46 shares of Fair Association stock instead of the 36 he had admitted and owned six War Bonds instead of the two or three he had testified to.

A trustee was appointed who thereafter took over the assets of the bankrupt and later made a sale thereof at public auction, with the exception of the War Bonds. The property sold at public auction realized an aggregate amount of $650. The war bonds were cashed or redeemed for $131.25, the result being that the estate realized from the sale of all the personal property the sum of $781.25. This did not include the $25 account due the bankrupt as a fee, which sum it appears was collected by the bankrupt in the interim between the filing of his petition and the date of the creditors meeting and which he has refused to pay over to the trustee.

On May 8, 1944, the trustee filed objections to the discharge of the bankrupt on the grounds that the latter had (1) knowingly made a false oath to his petition and schedules in that he had magnified his indebtedness by listing liabilities which he did not owe with the intent to deceive his general creditors as to his true indebtedness, and (2) had knowingly and fraudulently concealed from the trustee certain assets of the estate, consisting of the property heretofore enumerated, as well as certain interest in real estate. After a hearing on these objections, at which the bankrupt was represented by counsel, the referee found that the bankrupt owned no interest in real estate and dismissed the specifications relating to concealment of such interest. He sustained the specifications relating to concealment of the personal property and denied a discharge. He entered into no discussion of and did not specifically pass upon the objection alleging a false exaggeration of liabilities.

The question here involved is not complicated. The failure to schedule assets if done with the intent to defraud creditors is such a concealment of property as will bar a discharge under Sect. 14, sub. c(4), of the Bankruptcy Act, 11 U.S. C.A. § 32, sub. c.(1, 4). It may also be a bar to discharge under paragraph sub. c (1) of Sect. 14 as a punishable offense defined in Sect. 29, sub. b(1), 11 U.S.C.A. § 52, sub. b(1). Under either section it is clear that the concealment must have been "knowingly and fraudulently" done; the mere omission of assets from the schedules, through oversight or other innocent cause, is not sufficient to bar a discharge. The referee concluded that the concealment in this case was with the intent to defraud the creditors and the correctness of this holding is the only question raised.

It is urged by the bankrupt that his failure to schedule the property was purely an oversight; that when it was called to his attention he offered to and did amend his schedules; and that there is nothing on which to base a finding that he intended to defraud. The question of intention, because it involves some purpose existing in the mind of a person, which no other person can read, is usually difficult to determine. We must make our conclusions from all the surrounding circumstances of the case. In this instance we have as bankrupt an attorney who had himself at one time or another prepared petitions in bankruptcy for clients and was familiar with the requirement of the law for a full disclosure of all assets. He could not have acted through ignorance. It is most unusual that when he came to inventory his property to be surrendered to his creditors he should have forgotten his ownership of items that represented 80 per cent or more of the total value of such property as he owned. Measured in absolute terms the value of the property omitted may not be great; but in proportion to the value of the property scheduled it was very large. The contention that the omissions were due merely to oversight or forgetfulness loses weight when it is realized that the property forgotten had a value five or six times as great as that which was remembered, and that the omitted property had an actual and present value easily to be realized upon.

The argument that the bankrupt "readily admitted" his ownership of the omitted property and offered to amend his schedules has little force when confronted with the facts of the situation. The admissions of ownership were made only under questioning and only after a series of questions, each of which was directed to a specifically named item of property. Under these successive questions the bankrupt admitted the ownership of the property named in each of them, but there was no indication of a spontaneous or voluntary desire to make a full surrender of his property or to correct his previous omissions. Even

under this questioning his disclosures were not always accurate. He stated that he owned thirty-six shares of the Fair Association stock, whereas he actually owned forty-six; he stated that he had "two or three" war bonds, while he really owned six.

Where a bankrupt omits from his schedules property which should have been included therein, the burden is cast upon him to overcome by satisfactory explanation a presumption that the omissions were with the intent to defraud his creditors. Farmers Savings Bank v Anton, 8 Cir., 1 F.2d 103, 108, citing various cases. This would seem to be emphasized where the omitted property constituted such a large proportion of the estate as in this case. The explanation offered by the bankrupt here, namely, that he had forgotten or overlooked his ownership of the omitted property, did not satisfy the referee of his good faith; which, under the circumstances, is hardly to be wondered at. Certainly the referee was not bound to accept as conclusive the bankrupt's statement of good faith. If this were true the provisions of the statute would be largely nullified. A bankrupt might conceal whatever property he chose with the assurance that if by chance the concealment were discovered he could absolve himself by a mere statement that he had forgotten to schedule it.

A situation of this sort is particularly one where the conclusion of the referee is entitled to great weight. He had the bankrupt before him with the opportunity to observe and consider his attitude and manner of testifying. The referee was in the midst of the atmosphere of the case with a peculiar opportunity to judge from all the circumstances disclosed whether the omissions had been purposeful or due to mere oversight. One of the circumstances which the referee might have considered, and probably did, was the attitude of the bankrupt in refusing to turn over to the trustee the $25 fee which was paid him after the filing of the petition. While the uncertainty that this would be paid might have furnished some excuse for failure to schedule it as an asset, it was an account owing the bankrupt at the time the petition was filed and when later collected should have been turned in to the trustee as an asset of the estate. The action of the bankrupt in this matter is completely at variance with an honest desire that his creditors should have all that was

coming to them and reflected an intention of holding for himself whatever part of his property he could. Some questionable transactions regarding the bankrupt's real estate, while not directly involved here, together with the exaggeration of his liabilities for the apparent purpose of discouraging the creditors from investigation, were other circumstances so contrary to any conception of fair and open dealing with the creditors as might have tended to the referee's conclusion that the omission in the bankrupt's schedules was with a purposeful and fraudulent intent. Aside from the latter circumstances, however, the referee was justified in the conclusion he reached and I see no reason for disturbing it. The order denying a discharge will be affirmed.